VAUGHN *vs.* MILLER & BUSSEY, and *vice versa.*

1. If a wife was the creditor of her husband, with no other interest in his business than a creditor under ordinary circumstances has in the property and business of his debtor, she had the right, like any other creditor, to receive from him for the security of her debt collaterals taken in the course of his business, or to take in payment the debts he held against his customers. If, however, she, by concert and arrangement with him, assisted him to procure goods from the plaintiffs for the purpose of paying the debt she held against him which she could not otherwise have collected, or which she was doubtful about collecting, then she would have been guilty of such a fraud as would have made her liable for the debt, whether the plaintiffs extended the credit to her or her husband. These issues were not clearly submitted to the jury, nor were the several distinct aspects of the case clearly submitted.

(*a.*) It being in issue whether a husband acted as the agent of his wife, or whether she ratified his actions as such, it was error to charge that, if the goods sued for were sold to her through her husband as her agent, and the credit was given to her, although her husband was not, in fact, her agent, yet if she used in her business the goods furnished under this contract, and the goods were sent by the plaintiffs to persons to whom she made advances, and she knew it, this was a ratification of her husband's act, and the plaintiffs would be entitled to recover against her. Such a charge may have had the effect of excluding from the consideration of the jury any other facts than those enumerated, when there were others which might have controverted, or at least explained them, and which bore directly upon the disputed point.

(*b.*) The charge was also objectionable in assuming that she was interested in the business conducted by her husband, and that she, and not he, made advances to his customers, this being a question in controversy.

2. It was error to charge to the effect that, if the plaintiffs extended the credit to the wife, and afterwards took the notes of her agent as collateral security for the original indebtedness, it would be the duty of the plaintiffs to account for these notes and produce them at the trial, to show that they had not been negotiated and were not outstanding against the husband; and that, after producing them, they could recover against the wife on the original indebtedness. This charge was not sufficiently guarded and specific, making the liability of the defendant depend upon the plaintiffs having given credit to her, having taken the notes of her husband as collateral security and having delivered them up, and fixing her with ratification, though leaving out of view the necessity of

any knowledge on her part of the circumstances attending the transaction in order to charge her with the liability. It also seems to assume that the husband was her agent.

3. The cross bill of exceptions does not clearly show the objections to the testimony, the admission of which is complained of.

(a.) The defendant had a right to show by her husband the amount of money she advanced to him to carry on his business and to prove the conversations in relation to that advance at the time it was made.

4. Taking into consideration the date and the circumstances under which the husband made an assignment for the benefit of his creditors, and especially the fact that the paper showed the amount of his indebtedness to the plaintiffs on account of the transaction in controversy between them and the defendant, it was not altogether irrelevant, nor was it manifestly *res inter alios acta*, as explained by the husband, who was a witness on the trial.

5. Testimony as to what counsel advised would be the effect of making a payment on account was admissible to rebut and explain the payment of fifty dollars on the account in suit, which, it was alleged, was made by the defendant, and to that extent and for that purpose was competent.

April 20, 1886.

Husband and Wife. Debtor and Creditor. Fraud. Charge of Court. Evidence. Before Judge EVE. City Court of Richmond County. September Term, 1885.

Miller & Bussey brought suit against Mrs. Sarah E. Vaughn on an open account for $1,241.01 for merchandise furnished. The defendant pleaded the general issue.

On the trial, the evidence for the plaintiffs was, in brief, as follows: John B. Vaughn, the husband of the defendant, had been purchasing goods from the plaintiffs, but was slow in his payments, and they refused to credit him further. He afterwards stated to them that he had ceased to do business for himself, but was the agent of his wife, who, he said, had plenty of money, $20,000 in bonds, several houses and lots and a large amount of live-stock. He also showed them a lot of liens payable to the defendant. The plaintiffs sold the goods on the defendant's credit. Some were sent to the store conducted by Vaughn, but most of them were shipped to other parties on order from

him. The account was charged in the name of Vaughn at his request. Payments were made up to July, and then they ceased, Vaughn stating that the panic, which at that time was in progress, would prevent his raising the money, although his wife had good collaterals. The plaintiffs had him to make notes for the amount then due, not as payment, but as a security to close the account. They kept these up to the day of trial and then returned them to Vaughn. One of the parties to whom goods were sent testified that he had been doing business with Vaughn as a cropper; that he proposed to continue so doing, but Vaughn stated that he had given up his business to his wife; that the witness bought a horse from him and obtained advances, which were sent from the plaintiffs' store; that at one time, when an order was given, the defendant was present, and she stated that her husband would have to give an order on somebody for the goods, and it was given and the goods obtained from the plaintiffs; that the witness gave a lien to the defendant for his indebtedness, which was foreclosed and certain property sold under it. On November 3, Vaughn made an assignment, and put the plaintiffs in it as unpreferred creditors; and then for the first time they received notice that he was not doing business for his wife. After this, $50 was paid on the account and credited to the defendant. The lien mentioned above was introduced in evidence, and it was admitted that the parties mentioned in the plaintiffs' account were those who gave liens to the defendant, and that she had since transferred some of them to her husband. An account in favor of the defendant against one D'Antignac, containing an item for goods bought in 1884 from the defendant, was also introduced.

The testimony on behalf of the defendant was, in brief, as follows: She did not do business in 1884, and had no farm. Her husband was not her agent, and was not authorized so to represent himself, and did not do so, but bought on his own account. He borrowed $5,100 from

her, which she raised out of her separate property. He bought provisions and made advances, and to secure her caused liens to be made to her. These were not merely for advances, but also for amount due Vaughn for previous years and for horses bought from him. He was not her agent until after the assignment, and then he collected on the liens and paid over the money to her. The payment of $50 to the plaintiffs was without her consent, and after knowing of it, she refused to ratify it, though she said nothing about it to the plaintiffs. Vaughn was advised at the time by counsel that it would not affect his assignment. This assignment mentioned the plaintiffs as creditors of Vaughn for $1,245.00. He still owes his wife a considerable sum. As to the D'Antignac account, Vaughn testified that D'Antignac owed him on an old account; that when applied to for guano, he told D'Antignac that he owed his wife; that she would have to take a lien to secure her; and that he put the guano in the lien, and gave his individual note for it. The notes of Vaughn to the plaintiffs were put in evidence by the defendant.

The jury found for the plaintiffs. The defendant moved for a new trial, on various grounds, which are sufficiently stated in the decision. The plaintiffs made a counter-showing in the nature of a cross-motion for a new trial, alleging the following errors:

(1.) Because the court permitted the witness, John B. Vaughn, for defendant, to testify, over plaintiffs' objection, as to conversations between himself and wife, the defendant, and especially how much money he got from her to carry on his business, when plaintiffs were not present or connected therewith, and especially when it was to be used to show that the business was that of Mr. Vaughn, when plaintiffs insisted that the business carried on was that of Mrs. Sarah E. Vaughn.

(2.) Because the court admitted the assignment of Vaughn in evidence,—the objection being that it was a deed

between strangers, and that the plaintiffs never accepted or claimed under it.

(3.) Because the court permitted Mr. Lockhart, one of counsel for the defendant, to testify that he advised Vaughn that the payment of $50 would not affect his assignment,— the objection being that this could not bind the plaintiffs.

A new trial was refused, and the defendant excepted. The plaintiffs also filed a cross-bill of exceptions.

Wм. K. Miller, for plaintiffs.

Tutt & Lockhart, for defendant.

Hall, Justice.

1. It is not our purpose to enter into a detailed discussion of the facts disclosed by this record. It is not necessary to do this in order to determine the assignments of error made by the respective parties to the suit; and in view of the fact that the case must be remanded for another hearing, we think such a course would not be altogether proper. We remark generally that the evidence leaves it altogether doubtful whether the defendant's husband had either the express or implied authority of the wife to act as her agent in the dealings which resulted in this suit against her, or whether this was a collusive arrangement between husband and wife to procure the goods of the plaintiffs to furnish him with means to pay his indebtedness to her. We will not consider whether, in the latter event, it being found by the jury to be the true character of the transaction, she can be made liable upon the pleadings or in this form of action, as the question does not appear to have been made or determined on the trial. The sole issues submitted were as to the agency, and the express or implied ratification by the wife, of the conduct of the husband, whether he professed to act, and really did act, as her agent in the procurement of these goods from the plaintiffs, or whether they were procured for her benefit,

and were appropriated to her use, or the protection of her separate estate.   That she was the creditor of the husband; that she furnished the money he put in business, and made him her debtor therefor is altogether certain, but that she had in the business he conducted any other interest than such as a creditor, under ordinary circumstances, has in the property and business of his debtor, is more than doubtful from the slender evidence in the case on this subject, and she, being a creditor, had the undoubted right, like any other creditor, to receive from him collaterals taken in the course of his business, for the security of her debt, or to take in payment the debts he held against his customers.   If, however, she, by concert and arrangement with him, assisted him to procure these goods from the plaintiffs for the purpose of paying a debt she held against him, which she could not otherwise have collected, or which she was doubtful about collecting, then she would have been guilty of such a fraud as would have made her liable for the debt, whether they extended the credit to her or her husband.   Neither the entire charge, which is sent up with the record, nor any of its parts, clearly submits the questions nor the distinctions arising from the several and distinct aspects of the case to the jury, and the portions of it, even when taken in connection with the context excepted to by the defendant, render, as we think, this deficiency apparent.

The fifth ground of the motion for a new trial makes complaint of this charge: " If the plaintiffs, Miller & Bussey, sold the goods, for which suit is brought, to Sarah E. Vaughn, through John B. Vaughn, as her agent, and the credit was given to her, and John B. Vaughn was not, in fact, her agent, yet if she, in her business, used the goods furnished under this contract with Miller & Bussey, and the goods were sent to persons she advanced to by Miller &. Bussey, and she knew it, this was a ratification of John B. Vaughn's acts, and plaintiffs are entitled to recover against her."

The errors assigned are that the jury should not have been instructed that all that was necessary to charge the defendant and make her ratify the transaction, was her knowledge that the goods furnished by plaintiffs to her husband were sent to persons to whom she made advances, and were thus used by her, although her husband was not in fact her agent, and she knew nothing of any such agency; and further, that the charge issued to instruct the jury as to what act or acts would amount to a ratification, without submitting that question to them, upon all the evidence bearing upon the point.

In this last respect, we think the charge was too restricted. Whether so intended or not, it may have had the effect of excluding from the consideration of the jury any other facts than those enumerated, when there were others which might have controverted, or at least explained them, and which bore directly upon the controverted point.

The other exception correctly objects that the court assumed that she was interested in the business conducted by her husband, and that she, and not he, made advances to his customers. Her version of their business relations was entirely different from this; she claimed to be his creditor, that her separate estate was not embarked in his business or in any other business; that he never acted as her agent in his dealings with the plaintiffs; that she never so said to them, or did anything that could possibly lead them to that conclusion, and had no knowledge that he had ever held himself out to them as her agent; that she knew nothing of the terms on which they dealt with each other, and could not ratify acts of which she was not aware, and from which she derived no immediate benefit, or, to her knowledge, any indirect or remote advantage.

There was certainly evidence to sustain this view, perhaps more than there was to sustain that taken by the plaintiffs; and yet while the jury was fully instructed as to the latter, the former, if not entirely ignored, was barely alluded to in the most distant and general way. In this

respect and to this extent, the charge seems to have been partial and one-sided, and though doubtless it was unintentionally so, yet still it was well calculated to lessen the importance of the defence in the eyes of the jury, and cause them to overlook it in making up their verdict. Whether the acts of the defendant amounted to a ratification of her husband's agency, upon the assumption that he was not authorized by her to act as such agent, or whether the agency might be inferred from her conduct, were certainly, so far as concerned the facts themselves, from which such conclusions are to be drawn, questions for the jury.

2. Nor do we think the charge to the jury, that if they found from the evidence " that plaintiffs extended the credit to Mrs. Sarah E. Vaughn, and afterwards took the notes of John B. Vaughn, her agent, amounting to $1,500, as collateral security to the original indebtedness, it is the duty of the plaintiffs to account for these notes and produce them at the trial (to show that they had not negotiated them, and that they were not outstanding against Vaughn), and after producing them, plaintiffs are entitled to recover against Mrs. Sarah E. Vaughn on the original indebtedness for which this suit is now brought," was sufficiently guarded and specific. Under it the defendant's liability is made to depend in large measure, if not entirely, upon the fact that plaintiffs having given credit to defendant, and afterwards having taken the notes of her husband as collateral security, which they had delivered up; that this alone would render her liable to the original indebtedness and fix her with the ratification of his conduct as her agent, thereby leaving out of sight the necessity of any knowledge on her part of the circumstances attending the transaction to charge her with this liability. The charge, moreover, seems to assume that the defendant's husband acted as her agent in this matter, which was certainly error. As the agency was the turning point, its existence was stubbornly contested, and the evidence on it was conflicting.

3. As another hearing will be required, we shall have

to consider and pass upon the cross-bill of exceptions. The questions which it raises consist entirely of exceptions to decisions admitting evidence over the objections of plaintiffs, which are set forth in their response to defendant's motion for a new trial, and to which the cross bill refers. This is an unusual mode of bringing such questions before this court, and is not to be altogether commended, as it imposes upon us the necessity of an extended examination of the entire evidence relating to the points in order to ascertain whether they are well taken; a clear and succinct statement of the circumstances in which the questions originated would be preferable. We are not sure that we clearly comprehend from this cross-bill the force of the objections urged by plaintiffs to the competency of this testimony. But so far as we comprehend them, we think there was no error in the decisions of the court in relation thereto. The issue on trial involved the dealings between defendant's husband and the plaintiffs, who she alleged was their debtor instead of herself, and in order to ascertain her liability, it was competent to show the course of the entire dealings between these parties.

The defendant had a right to show by her husband, John B. Vaughn, the amount of money she advanced him to carry on his business, and to prove the conversation in relation to that advance at the time it was made.

4. Taking into consideration the date and the circumstances under which the husband made his assignment for the benefit of his creditors, and especially the fact that the paper showed the amount of his indebtedness to the plaintiffs on account of the transaction in controversy between them and the defendant, it was not altogether irrelevant, nor was it manifestly *res inter alios acta* as explained by the husband, who was a witness on the trial. Perhaps it was worth very little in determining the issues, but still it was relevant to them and may have been one of the circumstances necessary to a comprehension of the entire transaction by the jury.

5. The testimony of Mr. Lockhart seems essential to rebut and explain the payment of fifty dollars on the account in suit, which, it was alleged, was made bv the defendant, and to that extent and for that purpose was certainly competent.

The plaintiffs can take nothing by their cross bill, and the judgment on that writ of error is affirmed; but we find there is error in refusing defendant's motion for a new trial, and therefore order that judgment reversed.