## BIGBY *v.* WARNOCK.

1. A conveyance of property with intention to delay or defraud creditors, and such intention known to the party taking, is void as to them, though made in payment of a debt which in amount approximates the value of the property so conveyed.
2. Where in such a case a wife is the fraudulent grantee of her husband, and, in order to procure a loan to herself, conveys the property as security to one ignorant of the fraud, she is personally liable to a judgment creditor of her husband, as to whom the conveyance to her is void, for the amount of the loan or a sufficiency thereof to satisfy such judgment.
3. In an action brought by the judgment creditor of the husband against the wife in such a case, she can not, to reduce a recovery, plead a debt due her

by her husband. Moreover it is immaterial what she did with the borrowed money, provided she did not apply it to her husband's debts.

4. An assignment of error upon the refusal of the court to allow a witness to answer a specified question propounded by the party calling him is not properly made, unless it states what evidence was thus sought to be elicited, and that the court was informed thereof at the time of the ruling.

5. There was sufficient evidence to warrant the verdict. The rulings announced cover all of the material points in the case. In none of the grounds of the motion for new trial not therein dealt with does any error of material consequence appear.

Argued February 21, — Decided April 29, 1902.

Equitable petition. Before Judge Lumpkin. Fulton superior court. July 22, 1901.

*Dorsey, Brewster & Howell, Smith, Hammond & Smith,* and *B. H. & C. D. Hill,* for plaintiff in error. *Slaton & Phillips,* contra.

FISH, J. J. T. Warnock brought an equitable petition against John S. Bigby and his wife, Elizabeth K. Bigby, and the British American Mortgage Company Limited, hereinafter referred to as the Mortgage Company. The petition alleged, in substance, that on July 8, 1896, petitioner recovered a judgment against John S. Bigby for $9,515.56 principal, interest, and costs, and on September 10 of the same year he recovered another judgment against him for $617.85 principal, interest, and costs; that the executions issued on these judgments were returned with entries of nulla bona; that John S. Bigby claimed to be insolvent; that prior to 1896 he had large means, consisting of realty, bank, railroad, and other stocks, etc.; that in 1891 he was made president of the Eagle & Phenix Manufacturing Company, of Columbus, Ga., and continued in the control of the affairs of that company until June 13, 1896, when it was placed in the hands of receivers; that while president of that company he became indorser for large amounts on its obligations, and after he discovered that the company would fail he began to hide and dispose of his property, for the purpose of hindering, delaying, and preventing his creditors from collecting their debts; that in pursuance of such purpose, and without any consideration, he transferred to his wife, Elizabeth K., large amounts of stock in two national banks in Newnan and in the West View Cemetery Company and the West View Floral Company, and she knew at the time of the transfers that they were made for such fraudulent purpose; that on May 4, 1896, for the purpose of hin-

dering, delaying, and defrauding petitioner and other creditors — Mrs. Bigby knowing of such purpose at the time — Mr. Bigby conveyed to her, by a deed, a certain described house and lot situated on Washington street in the city of Atlanta; that though the deed stated the consideration to be $18,700, and though Mrs. Bigby claimed that the conveyance was made in payment of debts due to her by her husband, as a matter of fact there was no consideration for the conveyance and it was executed for the fraudulent purpose above stated; that on July 15, 1896, Mrs. Bigby, for the purpose of aiding her husband in hindering, delaying, and defrauding petitioner and other creditors of her husband, conveyed by deed the Washington street property to the Mortgage Company, to secure a loan to her of $15,000, and that she had no property except that which had been given to her by her husband. The petitioner prayed that the transfers of stocks and the conveyance of the Washington street property be decreed to be void; that the equity of redemption in the Washington street property be decreed to be subject to petitioner's judgments; and that Mrs. Bigby be decreed to be liable, as trustee ex maleficio, for any sum realized by her upon the security deed given to the Mortgage Company. The Mortgage Company was not served, and made no appearance. Bigby and his wife denied specifically all allegations of fraud made in the petition, and set up that the transfers of stock and the conveyance of the Washington street property were executed in good faith and with no intention to hinder, delay, or defraud the creditors of Mr. Bigby; that the consideration of such transfers and conveyance was an indebtedness due her by him, and three notes given by him to her, in payment of which he conveyed to her the Washington street house and lot, were specified, one dated January 4, 1893, due one day after date, for $10,500, being for one hundred shares of stock in the Atlanta & West Point Railroad Co., which he had given to her in 1883 and which she sold to him at the time the note was given, one dated July 12, 1893, due on demand, for $3,200, for money borrowed by him from her, and one dated May 3, 1895, payable on demand, for $5,000, the consideration being money loaned him by her, which she had received from the First National Bank of Newnan on stock he had given her in January, 1895.

Bigby died pending the suit, and his wife, as executrix of his will, was made a party defendant. On the trial, a verdict was rendered

finding the conveyance of the Washington street property to be void; that petitioner recover of Mrs. Bigby $9,503.71, " on account of the proceeds of the mortgage made by her," and " in favor of defendant as to the claim on account of stocks." A motion for a new trial was made by Mrs. Bigby on numerous grounds, which being overruled, she excepted.

1. One of the controlling questions presented in this case for determination is, whether under our law a conveyance of property made by a debtor, with intention to delay or defraud his creditors, such intention known to the party taking, is void as to other creditors, when made in payment of a debt which in amount is approximately the value of the property conveyed. Whatever may be the rulings of other courts on this question, it is well established by the former decisions of this court that a conveyance made under such circumstances is void as to creditors. In *Phinizy* v. *Clark*, 62 *Ga.* 626, Mr. Justice Bleckley said: " A fraudulent conveyance can not stand against creditors, whether made to secure a debt or not. The conveyance must be pure — it must be made bona fide, and with no purpose known to or suspected by the creditor to hamper or entangle the property as against other creditors for the sake of hindering or delaying them. If made partly to secure a debt, and partly to hinder, delay, or in any way defraud other creditors, and the creditor taking the deed has knowledge of this latter intention, or grounds for reasonable suspicion, no title will pass as against the other creditors." A like ruling was made in *Palmour* v. *Johnson,* 84 *Ga.* 91. In *Conley* v. *Buck,* 100 *Ga.* 188, a conveyance by a husband to his wife was attacked by his creditors as being void, because made to delay and defraud them. The wife contended that she was a creditor of her husband and had paid him full value for the land he conveyed to her. The case was tried before Judge J. H. Lumpkin, who also presided upon the trial of the case now in hand. His charges upon the question of fraudulent conveyances were practically the same in both cases. In passing upon exceptions to his charge in the former case, this court said: " There was no error on the trial of such a case, while the court was submitting to the jury the question as to whether or not a given deed from the defendant in execution to his wife, she being one of the defendants to the petition, was made with intent to hinder, delay, or defraud her husband's creditors, in charging, in substance, that if the

husband made the deed with such intent, and this was known to the wife, it was void as to the creditors, 'even though it may appear that she had paid a valuable consideration'; nor in charging that if in accepting such a deed she did so with the intention and purpose of delaying and defrauding such creditors the deed would be void, 'although it may have been based upon a valuable consideration.'" The doctrine was again recognized in *Monroe Mercantile Co.* v. *Arnold*, 108 *Ga.* 449, where Mr. Justice Lewis said, "Where the sole purpose of a debtor is to secure his creditors, and there is no intent to either defraud or delay others, such preference of a particular creditor will be upheld, although the natural result of it may be to delay other creditors. Were the doctrine otherwise, it would be almost impracticable for a debtor to exercise the privilege of preference given him by law, for he can in good faith secure a creditor by making to him a conveyance of all his property, yet the natural result of that would be necessarily to delay, if not *prevent*, the collection of debts due to others. But whenever *the purpose* of a conveyance is to bring about such delay, then the law itself is violated, and the contract by which his property is transferred becomes tainted with legal fraud." The validity of the conveyance is to be determined, not by its consideration or effect, but by the intention with which it is made and accepted.

There is nothing ruled in *Dodd* v. *Bond*, 88 *Ga.* 355, cited by counsel for plaintiff in error, which is in conflict with the decisions from which we have quoted. The point adjudicated in that case was, that " A creditor who gives credit to a mother, on the faith of property to which she has a legal title, but which in equity belongs to her children, acquires no lien upon the property by a judgment rendered against her after she has conveyed it to a trustee for their benefit, although she may have been actuated in making the conveyance by an intent and purpose to defeat such creditor, and such intent and purpose may have been known to the trustee when the conveyance was made. The property being equitably that of the children, and the creditor having acquired no lien upon it before his debtor parted with the legal title, he can not subject it to a sale under his judgment." It is true that, in delivering the opinion in that case, the present Chief Justice remarked that " There is authority to the effect that a conveyance by a debtor of his own property in discharge of a debt, though taken by the grantee with

the knowledge that it is intended to hinder, delay, or defeat other creditors, is good as against the latter, unless the grantee takes more than the amount of his debt, either for himself or for the debtor or others.". He further said, however: "Whatever may be the true view of the law where a debtor conveys his own property to a creditor, we are satisfied that where one conveys property not his own, which he wrongfully holds, to the rightful owner, the law does not require the latter to yield his rights and decline taking it because the person who has withheld it wrongfully may, in returning it, intend thereby to keep his own creditors from getting it.    One who takes merely what is his own is not punished for considerations which may operate upon the mind of the party who gives it up.    In this case the wrongful holder of property was performing a legal and moral duty — was doing that which in the eyes of the law ought to have been done, in placing the property where it belonged.    We hold, therefore, that the conveyance is good as against these creditors, and that they can not subject the property to sale under their judgments."    It is obvious that the ruling made in that case is not helpful to the plaintiff in error.

2. Complaint was made in the motion for a new trial that the court erred in instructing the jury as follows: "If you find, under the evidence and under the law as I have given you in charge, that it [the deed to the Washington street property] was void as against this creditor and should be so declared, then I charge you, whatever amount Mrs. Bigby received by placing a mortgage on the land would be, as a consequence of such finding, a receipt of money from land which she was not entitled to as against this creditor, and therefore she would be liable to account to him for such money so received to the extent of his judgment."    One of the exceptions to this charge was, in substance, that, even if Mrs. Bigby was the fraudulent grantee of her husband and she disposed of the property to an innocent mortgagee, the plaintiff was not entitled to a personal judgment against her, which would bind her separate estate.   It is a well-established doctrine that a judgment creditor has the right in equity to a personal or money judgment against a fraudulent grantee of his debtor, where the grantee has so disposed of the property as to place it beyond the reach of the judgment. 14 Am. & Eng. Enc. L. (2d ed.) 341; Wait, Fraud. Conv. § 177 et seq.; Bump, Fraud. Conv. § 623; and numerous cases cited by the

authors. The reason upon which the rule is founded is well stated in Ferguson *v.* Hillman, 55 Wis. 181, 12 N. W. 389, as follows: "The property in the hands of the fraudulent purchaser is held by him in trust for the creditors of his fraudulent vendor, and when the property is converted into money the money is impressed with the same trust. The original conveyance being void as to creditors, no title as to them ever passed to the grantee, and if he sells it and receives the money, he must hold the money for the benefit of the creditors. In equity such money in the hands of the fraudulent grantee is held for the benefit of the creditors." To same effect see Blair *v.* Smith, 114 Ind. 118, and Smith *v.* Sands, 17 Neb. 498. Of course, the recovery against the fraudulent grantee will be limited to the amount of the creditor's judgment against his debtor, and can not exceed the proceeds of the property or its value.

Does this rule apply where a wife is the fraudulent grantee of her husband? The Supreme Court of the United States, in Phipps *v.* Sedgwick, 95 U. S. 3, which was on appeal from New York, held that it did not. Mr. Justice Miller, in delivering the opinion of the court, said: "The statutes of the different States have gone very far in this country to modify the peculiar relations of husband and wife, as they existed at common law, in reference to their property. But they have not, except perhaps in Louisiana, gone so far as to recognize the civil-law rule of perfect independence in dealing with each other. While the statutes of New York have recognized certain rights of the wife to deal with and contract in reference to her separate property, they fall far short of establishing the principle that out of that separate property she can be made liable for money or property received at her husband's hands, which in equity ought to have gone to pay his debts. . . . Such a proposition would be a very unjust one to the wife still under the dominion, control, and personal influence of the husband." This case was followed in Trust Company *v.* Sedgwick, 97 U. S. 304, and Huntington *v.* Saunders, 120 U. S. 78, and these were approved in Clark *v.* Beecher, 154 U. S. 631. Mr. Wait, in his work on Fraudulent Conveyances (3d ed. § 180), says: "These Supreme Court cases certainly accomplish an unfortunate result, and probably will not be universally accepted, if, indeed, the principles they embody are not superseded in some States by the removal of the disabilities incident to coverture. In Post *v.* Stiger [29 N. J. Eq. 588] it appeared that property had

been conveyed to a wife in fraud of the husband's creditors. The wife set up as a defense the fact that she had disposed of it. The court said that she must answer for its value. An attempt was made to show that she had subsequently lost by bad bargains all the property that she had acquired by the conveyance. The proof did not seem to sustain this view, but the court remarked that, even if it had been so proved, this would not relieve her from liability, and continuing said: 'She held the property as trustee of her husband's creditors, and dealt with it at her peril. A fraudulent grantee can not repel the claims of the creditors of the grantor by simply saying: "I have lost, by imprudent bargains or collusive foreclosures, the property I attempted to conceal, and, therefore, am answerable for nothing."' It may be urged that this case is a dictum on the points cited. This is probably a legitimate criticism, for the court practically found that the wife still had the property; yet as an expression of opinion of a highly intelligent court, pointing, as we claim, in the right direction, we regard the dictum as worthy of adoption as an absolute authority." In Coale *v.* Moline Plow Co., 134 Ill. 350, 25 N. E. 1016, it was held: "Where a wife to whom her husband has fraudulently conveyed land mortgages it to a bona fide mortgagee, and, when the conveyance is attacked by the husband's creditors, claims to own the land, and avows the execution of the mortgage, she will be personally liable to the creditors for the money obtained on the mortgage, though it went to the husband." In Jones *v.* Davenport, 44 N. J. Eq. 33, 13 Atl. 652, it was held: "Where a husband, shortly before his death, transferred to his wife, who was afterwards his executrix, certain shares of bank stock for an alleged consideration, $2,500 less than she realized several months afterwards, the wife is personally liable to his creditors for the sum which she received from the sale."

In Blair *v.* Smith, supra, it was held: "Where a husband, to defraud his creditors, gives money to his wife, who yields no consideration, and who accepts the money with knowledge of his fraudulent purpose, she is chargeable as a trustee, and may be compelled to account as such at the suit of the husband's creditors." It is true that in these cases the point seems not to have been raised that the wife was not personally liable because she was presumed to have acted under the influence and control of her husband; but if any such presumption existed in law, surely it would have been

noticed by the learned judges who rendered these decisions. In Phelps *v.* Smith, 116 Ind. 387, where the ruling in Blair *v.* Smith, supra, was approved, Elliott, J., in delivering the opinion of the court, said: "The decision in Phipps *v.* Sedgwick, 95 U. S. 3, if conceded to be otherwise relevant, is not in point, because the court placed its judgment upon the disability created by coverture, saying that ' such a proposition would be a very unjust one to the wife still under the dominion, control, and personal influence of the husband.' Manifestly this rule can not apply in jurisdictions where a married woman possesses nearly all the rights of a feme sole, and where ' ability is the rule and disability the exception.' " Under our law a married woman, in dealing with her separate estate, stands upon the same footing as a man or a feme sole, with these restrictions only: she can not bind it by any contract of suretyship, nor by any assumption of the debts of her husband, nor sell it to a creditor in payment of her husband's debts, nor sell it to her husband without an order of the superior court. Civil Code, §§ 2488, 2490. As said by Chief Justice Jackson, in *Howard* v. *Simpkins*, 70 *Ga.* 322, " the law in regard to a married woman, and all her rights and disabilities, has undergone a complete revolution in this State since the act of 1866, which in effect, and as to all her property, makes her a feme sole, almost in every respect as if she never had been married, so far as property is concerned." Barring the exceptions above indicated, she may contract as if she were a feme sole, and she is certainly not under the dominion, control, and personal influence of the husband to the extent she was at common law. There the wife was not responsible, except as to certain offenses, for acts done in her husband's presence, for the reason that she was supposed to act under his coercion. Under our statute, however, there is no such presumption, but in order for the wife to stand excused for the commission of any offense, however small, on the ground of the presence of her husband, " it must appear that she was in fact coerced, or that he used violent threats, command, or some equivalent means of coercion calculated to overpower her will and render her a passive instrument rather than a voluntary agent of crime." *Bell* v. *State*, 92 *Ga.* 49. See Penal Code, § 38. In *Vaughn* v. *Miller*, 76 *Ga.* 712, it was held that if a wife by concert and arrangement with her husband assist him to procure goods from another for the purpose of enabling her husband to pay a

debt she holds against him, which she can not otherwise collect or which she is doubtful about collecting, she is guilty of such a fraud as will make her liable to the person from whom the goods are procured, whether the credit for the goods be extended to her or the husband.

It is further argued by counsel for plaintiff in error that: " It is the policy of our laws to protect [the wife's] separate estate against the influence of her husband, and, . . that the rule laid down by the court in his charge opens the gate to a method to subject the wife's separate estate to the obligations of the husband. If the rule shall prevail as enunciated by the court, it is easy for the husband to absorb the wife's property to himself." And the following illustration is given : " A man has a wife possessed of a large separate estate. He has a large estate. He wants money. The law presumes that the wife is subject to the husband's influence. He conveys to her in fraud of his creditors property of large value. He has her to mortgage it for its full value; he takes the money and appropriates it to his own uses. Creditors attack the conveyance ; it is found as in this case fraudulent; and as the property given her by her husband is mortgaged for its full value, a judgment against her for the amount realized from the mortgage is had; it sweeps away her entire separate estate. The law has been circumvented, the separate estate has been appropriated to the payment of her husband's debts, in spite of the statute enacted to protect it." Even . granting, for the sake of the argument, that the wife's separate estate would be subject in the hypothetical case suggested by counsel, it is very improbable that a husband would ever resort to such a scheme for the purpose of defrauding his wife. When he undertakes to devise means for the purpose of fraudulently protecting his own property against the just demands of his creditors, he is not likely to use methods the purpose of which is to subject his wife's separate estate to the payment of his debts, but he will, in all probability, adopt some plan by which his property may be put beyond the reach of his creditors and yet so placed that he and his wife may still enjoy both the benefits arising from its use and the use of her property also. If the law were, as counsel for the plaintiff in error insists it is, that a personal judgment can not be obtained against a wife who is the fraudulent grantee of her husband, a wide door, indeed, would be open for

fraud. All that an insolvent husband, who desired to defraud his creditors, would then have to do would be to conspire with his wife, convey all his property to her, have her sell or mortgage the same to an innocent party, and conceal the proceeds. She would then be enabled to enjoy the fruits of her own wrong, while her separate estate, however large it might be, would be free from liability.

3. Another contention of the plaintiff in error was, that no personal judgment should be rendered against her, because the evidence showed that she borrowed $10,000 from a bank, for which she gave her note, with her husband as surety ; that she loaned this money to the Eagle & Phenix Manufacturing Company and took its note, with her husband as indorser thereon; that of the money she loaned it the company paid $5,000 in satisfaction of a note held by Warnock against it, upon which her husband was indorser; that she paid her note to the bank with part of the money she borrowed from the Mortgage Company and for which the security deed was given ; and that she had recovered a judgment against her husband, as indorser, on the note given her by the Eagle & Phenix Manufacturing Company, for a sum larger than the amount she had received from the Mortgage Company. She therefore claimed that, as her judgment against her husband was larger than the amount which she had obtained by encumbering the realty which her husband conveyed to her, she was not liable to the plaintiff in the case, and, further, that she was not liable because she had, in effect, appropriated $10,000 of the money she received from the Mortgage Company to the payment of her husband's debts. We do not think these contentions sound. As already seen, if Bigby fraudulently conveyed the house and lot to his wife for the purpose of defeating his creditors, and she participated in the fraud, she was liable, as a trustee ex maleficio, to Warnock to the amount of his judgments, for the money she procured on the property by conveying it to the Mortgage Company, which took without notice of the fraud. If she was such a fraudulent grantee and had really paid a part of the consideration for the property transferred to her by her husband in cash, she could not even set up against the plaintiff's recovery the amount of money which she thus paid. For the rule is, that " The loss of the amount paid by the fraudulent grantee is the penalty which the law inflicts for the fraudulent transaction. To refund to the grantee the amount he has paid would be to re-

move all danger of loss, and destroy the salutary restraint which the law has built up against such transactions." 14 Am. & Eng. Enc. L. (2d ed.) 245. It seems that the spirit of this rule would preclude a fraudulent grantee from setting up a debt which the grantor owes him, to reduce the amount of the recovery against him by the grantor's creditor. But be this as it may, it is certainly true that the conveyance from Bigby to his wife was valid as between them, though made to defeat his creditors and accepted by her with knowledge of the fraudulent purpose. *Flannery* v. *Coleman,* 112 *Ga.* 648. After such conveyance, the title to the property was in her as to all the world except her husband's creditors; and it follows that she in like manner held the money she borrowed on the property from the Mortgage Company. This being true, this money, which as to the plaintiff, Warnock, she held as trustee, and which was subject to the debt he held against her husband, should not be applied to the payment of a debt she held against him, because as between her and him it was not his money, but hers, and it would be an anomaly for her to collect a debt she held against her husband out of her own property. Nor could the use made by Mrs. Bigby of the money she received by encumbering the property, if she was such a fraudulent grantee, affect the recovery against her, provided such money was not applied to the payment of her husband's debts. Mason v. Pierron, 69 Wis. 585. See 14 Am. & Eng. Enc. L. (2d ed.) 347. The portion of the money Mrs. Bigby received from the Mortgage Company which she paid to the bank was in satisfaction of her own debt, for which she had given her individual note, with her husband as surety. She, and not her husband, was the primary debtor on this note, and she got the benefit of the payment. That the Eagle & Phenix Manufacturing Company, to which she loaned the money she borrowed from the bank, had used part of it in paying a note which Warnock, the plaintiff below, held against it, and upon which Bigby was indorser, is wholly immaterial, as such payment was in liquidation of a debt for which it was primarily liable, and not Bigby. It is clear, therefore, that the $10,000 paid to the bank by Mrs. Bigby was not a payment to any creditor of her husband. Our conclusion upon this subject is that, while recognizing the great weight which should be accorded to the decisions of the highest judicial tribunal in the land, yet the reasons given by the court in Phipps v. Sedg-

wick, 95 U. S. 3, for holding that where property is conveyed by a husband to his wife in fraud of his creditors, a personal judgment for its value can not be taken against her, do not apply in this State, where married women are practically free from the disabilities imposed upon them at common law.

4. In one of the grounds of the motion for a new trial complaint was made of the refusal of the court, upon objection made by counsel for defendant in error, to allow a witness to answer a question propounded by counsel for plaintiff in error. The motion set forth what the answer to the question would have been, but it does not appear that the court was informed, at the time the ruling excepted to was made, what answer was expected to the question. The exact point here presented was decided in *Southern Mutual Insurance Co.* v. *Hudson,* 113 *Ga.* 438. In discussing a ground of a motion for a new trial, similar to the one now under consideration, Mr. Justice Little, speaking for the court, said : " Under repeated rulings of this court, the ground can not be considered, because the material inquiry is, did the court err in excluding the answer to that question from the jury ? And there having been no statement made on the trial as to what his answer would have been, the judge, of course, did not pass on the materiality of the proposed testimony ; and because he did not, we can not overrule him. . . He was entitled at least to have known in substance what the answer to the question would have been." There was, therefore, no merit in this assignment of error as made in the motion for a new trial.

5. Counsel for plaintiff in error earnestly contended that the verdict was without evidence to support it ; that the plaintiff below sought discovery from Mr. and Mrs. Bigby, and they both answered denying that the conveyance from him to her of the Washington street property was made with any intent to hinder, delay, or defraud plaintiff or any other creditor, but asserted that the conveyance was made in good faith, for the purpose of paying bona fide debts due her by him, which were set out in detail ; and that their answers were not overcome by two witnesses, or one witness and corroborating circumstances. After a very thorough examination and consideration of the evidence in the record, we have concluded that it was sufficient to warrant the jury in finding that the conveyance of the Washington street house and lot was made by the grantor for the purpose of delaying or defrauding his creditors, and that the

grantee knew of such purpose at the time, or had reasonable grounds of suspicion of that fact. The contentions of the plaintiff below were, (1) that the conveyance was voluntary, without valuable consideration, and made by an insolvent debtor; (2) that it was made with intention to delay or defraud creditors, and such intention was known to the grantee. The interrogatories propounded to Mr. and Mrs. Bigby in the plaintiff's petition were manifestly confined to questions relating to the first of these contentions. They were both interrogated as to the value of their respective estates during the years 1891, 1892, 1893, 1894, 1895, and 1896. They were asked, of what their estates consisted during those years; what had become of the property; if any of it had been transferred, to whom, when, how, and for what consideration, and what was done with the proceeds received from it? The only interrogatories propounded specifically to Mr. Bigby in reference to the Washington street property were as follows: " Did your wife pay you any consideration when you transferred the Washington street house and lot to her; if so, what was the consideration ? If it was in money, what did you do with the money, where did she get it, and from whom did she get it ? If it was an indebtedness from you to her, state when and how it originated, and in what shape it was when you transferred said house and lot to her. If she loaned you the money, state when she loaned it to you and where she got it." The only interrogatories propounded to Mrs. Bigby as to such property were practically the same. The petition expressly stated that discovery from the defendants was waived, except as to the specific questions therein propounded.

Granting that answers responsive to the interrogatories would, after the defendants were sworn and examined as witnesses in their own behalf, have to be overcome by the testimony of two witnesses. or one witness and corroborating circumstances, this was not true as to answers which were not so responsive, and as to subjects in relation to which discovery had been waived. We will mention some of the circumstances in evidence from which, in our opinion, the jury could have found that the conveyance of the Washington street property was made to delay or defraud the creditors of the grantor, and that the grantee took with knowledge of the fraudulent purpose, or grounds for reasonable suspicion. The parties to it were husband and wife, and the familiar rule that transac-

tions between them are to be closely scanned and their bona fides clearly established was applicable. The grantor was insolvent at the time, and the suits upon which defendant in error obtained judgments against him were then pending. The conveyance was executed May 4, recorded May 28, and the property conveyed by the grantee to the Mortgage Company on July 15 thereafter. The three notes of the grantor held by the grantee, the payment of which they claimed to have been the consideration for the conveyance, were dated respectively July 4, 1893, July 12 of the same year, and May 3, 1895, two of them payable on demand, the other one day after date; and the grantee never made any request for payment of either the interest or principal until within about two months before defendant in error obtained judgment against the grantor, when the grantee then demanded payment. The consideration stated in the conveyance was $18,700, the sum total of the principal of the three notes. The grantor testified: "The consideration that was specified in the deed was purely an arbitrary one, one that we thought would control in giving in taxes." "I transferred this house on May 4, 1896, to pay her this note and dividends and other debts that I owed her. The fair valuation of the house and lot at that time was probably sixteen or seventeen thousand dollars." The grantee in her application to the Mortgage Company for the loan valued the property at $30,000, and there was evidence that it was worth $25,000.

The rulings made cover all the material points in the case. In none of the grounds of the motion for a new trial not dealt with does any error of material consequence appear.

*Judgment affirmed. All concurring, except Lewis, J., absent.*