Spier *vs.* Lambdin.

---

J. P. SPIER, plaintiff in error *vs.* C. E. LAMBDIN, defendant in error.

(This cause was argued while Warner, C. J., was sick, but the opinion was not delivered till the 30th of March, 1872.)

(BY TWO JUDGES.)—When A, a school teacher, was induced by B, another school teacher, to purchase of B the lease of an academy, under inducements held out by B that, if he could sell, he would quit teaching in the locality, and, on these inducements, the purchase was made: *Held*, that equity will enjoin B from teaching a school in the locality, during the lease.

Spier *vs.* Lambdin.

Injunction.   Restraint of Trade.   Statute of Frauds. Tried before Judge GREEN.   Pike County.   Chambers. February, 1872.

Spier's bill against Lambdin made this case: In 1867, the trustees of the Barnesville Academy leased the academy and grounds to Lambdin, for ten years, in consideration that he would fence the lot, keep the premises in repair, and teach there a school during said term, with a full corps of teachers.   In 1870, Spier was teaching school, also, in Barnesville, with one Lewis as his assistant.   In the fall of 1870, Lambdin proposed to sell the unexpired term of said lease to Spier for $475, with the consent of the trustees.   To induce Spier to accept his offer, Lambdin said his own health was bad, and that he wished to abandon school teaching, did and would use his influence and patronage for Spier's benefit, and Spier would have but little opposition in said town. Relying upon these representations, Spier accepted his proposition, and paid him nearly all of said $475, and now tenders him the balance.   But for them he would not have made said trade.   Yet Lambdin, in January, 1872, is about to open a school in said town.   This will injure Spier in an uncertain amount.   He prayed that Lambdin be enjoined.   A temporary injunction was granted, and Lambdin was ordered to show cause why it should not be continued. Lambdin answered that the whole trade between them was in writing, which he exhibited.   It was signed in October, 1870. By it, in consideration of $475 to be paid, Lambdin transferred said lease to said Spier and Lewis, and they agreed to carry out his covenants with said trustees.   He denied making any promise not to teach in Barnesville, or any representation that he would not.   He set up that he was going to open only a select school, of limited number, and that those who were going to patronize him, but with one exception, would not send to Spier, even if he (Lambdin) did not teach.

Spier *vs.* Lambdin.

On the hearing, Lewis made affidavit that Lambdin did hold out such inducements to have his proposition accepted ; that he (Lewis) paid no part of the $475, and had no interest in the trade, though the paper was to him and Spier, as aforesaid. Spier's brother testified to having seen two letters from Lambdin to Spier, in which he said his health was bad, and he wished to abandon teaching, and therefore would sell out. And it appeared that, at the time of the trade, Spier had ninety-six students, and Lambdin but twelve.

Lambdin produced the affidavits of various persons, that they had contracted with Lambdin, to teach their children, during 1872, and that they did not desire to nor intend to patronize Spier.

Upon argument had, the Chancellor refused to extend the injunction, and dismissed the bill. That is assigned as error.

JOHN F. REDDING, for plaintiff in error.

J. A. HUNT, for defendant.

McCAY, Judge.

We think there is equity in this bill. The complainant, as he states his case, is about to receive a damage, recognized by law as a wrong, and for which the forms of the law side of the Court do not furnish an adequate remedy. The answer does not (except by argument and inference) meet the charges in the bill. It does distinctly say that the money paid was paid in consideration of the lease; but, we think, there was a cautious shunning in the answer of the charges in the bill on the real merits of the case. The point of the bill is, that the distinct object and purpose of the purchaser was to get the defendant out of the way as a teacher, and that this was the mutual understanding. It may well be true that the *lease* was worth the money paid, and also very true that the complainant would never have thought of buy-

ing, except for the special reason charged—that if the defendant could sell, he would no longer teach a rival school.

If this was by distinct, positive agreement, it might very well have not formed any consideration for the money paid for the lease. In other words, the complainant might be willing to give that much for the lease, led by the other consideration, that, in buying the lease, he was securing a school without any competition from the defendant.

If this was the case, and that is what the bill charges, the arrangement by which defendant was to quit, and not set up any rival school, was not necessarily part of the sale of the lease, but an independent contract, for which the lease-contract was the consideration. There is just such a case as that in 30 Georgia Reports, *Mell vs. Mooney*, 414.

If this be true, if this was an *independent* contract for which the agreement to buy the lease was the consideration, then it may be proven by parol, notwithstanding the lease-contract was reduced to writing; since it forms no part of it, but stands on its own terms, to-wit: it is a contract for which the other *contract* is the consideration. But, even if it were required to have been written, does not the letter of defendant, mentioned by Spier's brother, in his affidavit, fulfill even the statute of frauds?

There is, however, a view of this case which is conclusive. According to the statements of the bill, (and in this respect the answer is not contrary), this contract to purchase the lease was procured by representations of defendant, that if he could sell he would quit, or intended to quit. The complainant was induced to buy by these representations. If they were made in bad faith, the contract was procured by fraud, since the complainant states that this expectation was the motive that led him to buy.

The defendant will not, if this be true, be permitted to fly in the face of his inducements to turn his own contract into a fraud. The remedy at law would be either to rescind the contract and sue for the money, or bring an action for dam-

ages. But the complainant has a right, if he pleases, to stand on his contract. He is not bound to rescind. He has, therefore, only his remedy for damages.

Is this an adequate remedy? How can they be got at? What is the measure of them? How can it satisfactorily appear that any particular patron has or has not been influenced by this opposition school? That a child is sent to it is no reason for saying that if one were not there it would be sent to complainant. To get at the truth would require a looking into the private motives of every parent in the community. We think, therefore, the injunction ought to have been granted.

Let the case go to a jury on the evidence, and if the defendant has, either by express contract or by representations on which the complainant acted, put himself in such a situation as that it would be a breach of his contract, or a fraud upon complainant, to set up a school in the neighborhood during the continuance of this lease, the injunction ought to be perpetual.

Judgment reversed.