## 51470. COOPER v. MERCANTILE NATIONAL BANK.

Marshall, Judge.

This is an appeal by the maker of a promissory note, Dr. Cooper, from a verdict and monetary judgment of $70,216.16 plus costs in favor of the payee, Mercantile National Bank. Cooper enumerates four errors, two dealing with the separate grants of partial summary judgment in favor of the bank and two dealing with the alleged erroneous exclusion by the trial court of evidence sought to be introduced by Cooper. The relevant facts reflect that the bank had Pro-Data, Inc., as a corporate

customer. Cooper was a stockholder and director of that corporation as well as a private customer of the bank. The bank had extended to Pro-Data the maximum credit allowed by national banking laws. Pro-Data however was being pressured to pay debts in excess of $70,000 to one of its principal creditors. That same creditor had a letter of guaranty from the bank in the amount of $50,000. Being dissatisfied with the payments made by Pro-Data, the creditor made demand on the bank for payment of the $50,000 guaranty.

At a meeting of the board of directors of Pro-Data, the operational head of the bank, one Harris, set forth the viable alternatives. The bank could not lawfully extend further credit to Pro-Data. It could pay the $50,000 and foreclose on the assets of the corporation held by the bank, but this would effectively destroy the corporation. However, the corporation had pending, subject to approval by the Securities and Exchange Commission, the public sale of shares of its stock which would bring $400,000 cash to the corporation, enabling it to pay its debts and continue profitable operations. This approval was believed to be imminent. Because of the imminence of this available cash, Harris recommended that the defendant Cooper arrange a personal loan of $50,000 from the Franklin National Bank in New York, a Mercantile correspondent bank. In a complicated arrangement, Cooper did sign a personal note for $50,000 payable to the Franklin National Bank. The proceeds of this note were used to purchase a Certificate of Deposit in the name of Dr. Cooper. It was placed by Cooper with the Franklin Bank. This Certificate of Deposit was used as collateral for a loan by the Franklin Bank to Pro-Data in the amount of $50,000. Pro-Data paid the $50,000 to its creditor, which in turn surrendered the letter of guaranty of $50,000 back to the plaintiff, Mercantile Bank. The note by Dr. Cooper to the Franklin Bank was a 30-day note. When the imminent sale of Pro-Data stock did not occur as quickly as anticipated, the 30-day note to the Franklin Bank became due. Upon the advice of Harris, defendant Cooper successively renewed the note with the First National Bank of Atlanta, the C & S Bank of Atlanta, back to Franklin National Bank, back to the First

National Bank of Atlanta and finally to the plaintiff Mercantile National Bank. It is the last note to Mercantile National Bank which gave rise to the suit. *Held:*

1. In his first enumeration of error, Dr. Cooper alleges the trial court erred in granting the bank's motion for partial summary judgment with respect to Dr. Cooper's sixth defense which contended that the bank by arranging for a personal loan to one of the directors of Pro-Data to pay part of Pro-Data's debts had devised a scheme to violate the lending limits of the National Banking Act, thus making the entire transaction void and unenforceable.

The trial court did not err in its grant of this motion for partial summary judgment. A loan made by a national bank in excess of its loan limit is not void as to the borrower, but subjects the bank and its officers to certain specified forfeitures and penalties (12 USCA § 93), upon action in a federal court by the government. Gold-Mining Co. v. National Bank, 96 U. S. 640 (24 LEd 648). Moreover, Dr. Cooper concedes that a borrower cannot interpose the defense of a violation of national banking laws to resist repayment of a loan (Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240 (13 SC 66, 36 LE 956)) but contends that where a bank or banks have concealed the true nature of a loan with the intention of disguising excessive loans and keeping such loans from coming to the attention of bank examiners, such loans are void and unenforceable. Oakes Nat. Bank v. Farmers' State Bank, 52 N. D. 49 (201 NW 696); Live Stock State Bank v. First Nat. Bank of Fairfield, 300 F 945. The record and transcript in this case disclose no evidence of a secret agreement or an illegal loan. The original loan and all subsequent loans were within the lending limits of the particular lending institution to Dr. Cooper so far as the evidence discloses. The cases cited by Dr. Cooper furnish no exception to the general rule stated in Gold-Mining Co. v. National Bank, 96 U. S. 640, supra.

2. In his second enumeration of error, Dr. Cooper urges that the trial court erred in granting the bank's motion for partial summary judgment with respect to Cooper's fourth defense, which contended that the bank, through its officer and agent Harris, had agreed to hold

Dr. Cooper harmless in the loan transaction. Dr. Cooper contended throughout that the original note was executed by him as a favor to his friend, Harris, because the bank, Harris' employer, stood to lose $50,000 on its letter of guaranty on behalf of Pro-Data. Dr. Cooper alleged that from the beginning Harris had promised the bank would take Cooper out of the first and all succeeding notes should Pro-Data be unable to pay its debts, including Dr. Cooper's $50,000 note.

Harris, on the other hand, while admitting that he, speaking on behalf of Mercantile National Bank, assured each of the other banks involved that Mercantile would take those banks out of the note either by moving it or taking it up itself, denied ever assuring Dr. Cooper that the bank would guarantee Dr. Cooper's personal responsibility. Harris asserted the common understanding was that the note would be satisfied (1) out of the public sale of Pro-Data stock (which never occurred), or (2) that Dr. Cooper would take a second position on the assets of Pro-Data.

We conclude that the trial court correctly granted this partial summary judgment. A president or other officer of a bank is precluded from entering into an arrangement with one of the bank's depositors by which funds or other security due the bank will be impaired, or from making promises which will relieve the maker of a note payable to the bank from responsibility therefor. *Swindell & Co. v. Bainbridge State Bank,* 3 Ga. App. 364 (60 SE 13).

Dr. Cooper does not contend that he was induced to sign the $50,000 note by fraud or misrepresentation but does contend that the oral hold-harmless agreement was a separate, contemporaneous, and consistent agreement, which was the primary consideration and inducement for his signing of the promissory note. As a separate agreement, he contends parol evidence of that agreement is admissible, citing *Spier v. Lambdin,* 45 Ga. 319; *Langenback v. Mays,* 205 Ga. 706 (54 SE2d 401); *Indiana Truck Corp. v. Glock,* 46 Ga. App. 519 (168 SE 124). Each of these cases does support a rule that a distinct, collateral oral agreement that is consistent with and usually forms part of the consideration or inducement for the second

written agreement, may be established by parol evidence.

The note in question contains facially no ambiguous language. The parol agreement advanced by Dr. Cooper is antagonistic to and inconsistent with a promise to pay. The cases are legion that a complete and unambiguous instrument cannot be varied or contradicted by reliance upon inconsistent parol statements. *Redfearn v. C & S Nat. Bank,* 122 Ga. App. 282 (176 SE2d 627) is indicative of the rule. See also *Horne v. Harris Motor Co.,* 91 Ga. App. 844, 847 (87 SE2d 350) and cits.

As to Dr. Cooper's argument that there was no consideration since the proceeds of the note were for the benefit of Pro-Data, this is without merit. As a director and stockholder of Pro-Data, the benefits of the note were conferred at least indirectly upon him. There can be no legitimate question of lack of consideration. *Ashburn Bank v. Childress,* 120 Ga. App. 632 (171 SE2d 768); *Crosby v. Jordan,* 123 Ga. App. 83 (179 SE2d 537).

3. In his third and fourth enumerations of error, Dr. Cooper attacks the trial court's exclusion of testimony offered by the defense.

(a) In the third enumeration of error, appellant alleges that the trial court erred in curtailing his cross examination of the witness Harris. Dr. Cooper, while cross examining Harris, asked whether the bank president had threatened Harris with personal liability for the contested note if Harris had erroneously on behalf of the bank guaranteed Dr. Cooper's note. Upon objection to the question, Dr. Cooper, by offer of proof, asserted that notwithstanding questions of liability of either the bank or Harris but solely to establish motive and state of mind the question and answer would deal with the witness' possible belief of personal liability for the note and that the evidence could affect the witness' credibility. As a defense secondary to the claim of the bank's guaranty of the note, and a counterclaim Cooper alleged that he did not authorize his secretary or Harris to execute the $50,000 note sued upon. He alleged that Harris had improperly filled out a note which Cooper had executed in blank to cover a smaller unrelated note. This unrelated note held by the Mercantile Bank had become due at about the same time. Thus, in effect, Cooper asserted

Harris executed the $50,000 note without authority to cover the note due the First National Bank in order to avoid the possibility of his own personal liability based upon the illegal guaranty. Though appellant indicated why he wanted to introduce the bank president's statement to Harris and what he wished to establish thereby, at no time did appellant make any offer of proof as to what the actual statement of the bank president might be or how it might accomplish the desired purpose. The trial court apparently considered the evidence to be hearsay or remote. As a result, the question and answer were excluded.

(b) The fourth enumeration complains that Dr. Cooper should have been allowed to explain his course of conduct in not immediately denying his personal liability for the contested note and in not seeking immediate relief. Apparently, Dr. Cooper had entered into a discussion with the president of the bank after he became aware that the bank maintained he was personally liable for the note. In his briefs, Dr. Cooper makes clear that the president of the bank decided to withhold legal action on the note until efforts were made to obtain cash from other sources (i.e., sale of stock or assets of the corporation) in order to satisfy the note. At trial, while testifying on his behalf, Dr. Cooper attempted to offer the substance of the bank president's position in order to explain his own delayed action to deny liability for the note but such testimony was excluded.

A fair reading of the testimony of Dr. Cooper in the transcript reflects that the question and answer prior to the offer of the position of the bank president established that Dr. Cooper had told the bank president the note was not the responsibility of Dr. Cooper, he had received no proceeds thereof, and that he had no intention of paying it. The two questions to which objections were sustained asked about a commitment of the bank in relation to the note and a request by the president relating to the public offering of Pro-Data. There was no further offer of proof as to what the commitment of the bank might be or what relationship the public offering of Pro-Data stock had to the note. It is clear also from the record that the trial court considered the position of the bank to be an insistence on

the validity of the note and that of Dr. Cooper to be a denial of responsibility. The defense made no further effort to clarify its position to the trial court. The only offer made by Dr. Cooper was that the testimony was being offered to explain his conduct during the months immediately following the due date of the note.

Thus, in relation to the exclusion of the questions and answers of appellant upon his direct examination and of Harris upon cross examination, the issue presented is whether appellant ever made the trial court aware of the actual evidence sought to be introduced. We hold he did not.

No matter how competent evidence might be, a new trial will not be granted merely because evidence has been excluded. It must appear that the excluded testimony was material and the substance of what the material evidence is must be called to the attention of the trial court at the time of its exclusion. *Welsh v. Fowler,* 124 Ga. App. 369 (183 SE2d 574); *Bigby v. Warnock,* 115 Ga. 385 (4) (41 SE 622). It is not sufficient to set forth thereafter in a motion for new trial or in an appellate brief what the witness would have answered. The error, if any, must have been committed at trial, and the ruling must have been made, not on a question only, but in the light of the facts about which the witness would have testified. *Griffin v. Henderson,* 117 Ga. 382 (2) (43 SE 712). Dr. Cooper's offer to show relevance did not satisfy the requirement of showing the substance of the proffered evidence. *Crawford v. Gale,* 204 Ga. 448, 449 (49 SE2d 905); *Maloy v. Dixon,* 127 Ga. App. 151, 153 (193 SE2d 19); *Parrish v. State,* 88 Ga.'App. 881, 883 (78 SE2d 366). The trial court did not err in curtailing what appears from the transcript to be evidence wandering too far afield. *Western & A. R. v. Burnett,* 79 Ga. App. 530, 532, 533 (54 SE2d 357).

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED NOVEMBER 3, 1975 — DECIDED JANUARY 29, 1976 — REHEARING DENIED FEBRUARY 16, 1976 —

*Fierer & Devine, Foy R. Devine,* for appellant.
*Nall, Miller & Cadenhead, G. William Thackston,*

*Wayne J. Pierce,* for appellee.