**ROCKWELL INTERNATIONAL CORPORATION, Plaintiff,**

**v.**

**Sam B. RIDDICK, Defendant.**

**Civ. A. No. C85–1517A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

March 19, 1986.

W. Terence Walsh, Alston & Bird, Atlanta, Ga., for plaintiff.

J. Corbett Peek, Jr., Peek and Whaley, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

Presently pending in this breach of contract action is plaintiff's motion for summary judgment. For the reasons set forth below, the court PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion.

## FACTS

At the center of this dispute are four "continuing" guaranties signed by defendant, Sam B. Riddick, as guarantor of certain indebtedness of a corporation known as "Southeastern Wheels, Inc." Riddick was president of Southeastern Wheels, Inc. at the time he signed the guaranties and all four of the guaranties identified him as such following his signature.

Three of the guaranties guaranteed the indebtedness of Southeastern Wheels to a corporation identified as "Western U.S. Industries" and one guaranteed the indebtedness of Southeastern Wheels to a corporation identified as "Western Wheel, a division of Rockwell International, Inc." Western Wheel became the successor-in-interest of Western U.S. Industries when plaintiff, Rockwell International Corporation, purchased Western U.S. Industries and made it a division of Rockwell Interna-

tional called Western Wheel. (McKenney affidavits and Exhibit B filed January 22, 1986).

Each guaranty was substantively identical, stating in pertinent part:

(1) For valuable consideration, the undersigned (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay to [WESTERN [1]], or order, on demand in lawful money of the United States, any and all indebtedness of Southeastern Wheels, Inc. (hereinafter called Borrowers) to WESTERN....

(2) The liability of Guarantors shall not exceed at any one time the [respective amount of the guaranty] for principal, together with all interest on such part of the indebtedness as does not exceed aforesaid principal. Notwithstanding the foregoing, WESTERN may permit the indebtedness of Borrowers to exceed Guarantors liability. This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This Guaranty shall not apply to any indebtedness created after actual receipt by WESTERN of written notice of its revocation as to future transactions.... The obligations of Guarantors hereunder shall be in addition to any obligations of Guarantors, or either of them, under any other guaranties of the indebtedness of Borrowers or any other persons heretofore given or hereafter to be given to WESTERN unless said other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties. The liability of any Guarantor to WESTERN shall at all times be deemed to be the aggregate liability of said Guarantor under the terms of this Guaranty, and of any other guaranties

---

1. For the sake of convenience the court uses "Western" to refer to both Western U.S. Industries and Western Wheel.

heretofore or hereafter given by said Guarantor to WESTERN and not expressly revoked, modified or invalidated.

(3) The obligations hereunder are ... independent of the obligations of Borrowers, and a separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Borrowers or whether Borrowers be joined in any such action or actions; ....

(4) .... WESTERN may without notice assign this Guaranty in whole or in part.

(5) Guarantors waive any right to require WESTERN to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; .... Guarantors waive any defense arising by reason of any disability or other defense of Borrowers or by reason of the cessation from any cause whatsoever of the liability of Borrowers. Until all indebtedness of Borrowers ... shall have been paid in full, even though such indebtedness is in excess of Guarantors' liability hereunder, Guarantors shall have no right of subrogation, and waive any right to enforce any remedy which WESTERN now has or may hereafter have against Borrowers, and waive any benefit of, and any right to participate in any security now or hereafter held by WESTERN....

(7) Any indebtedness of Borrowers now or hereafter held by Guarantors is hereby subordinated to the indebtedness of Borrowers to WESTERN; and such indebtedness of Borrowers to Guarantors is assigned to WESTERN as security for this guarantee and the indebtedness and if WESTERN so requests shall be collected, enforced and received by Guarantors as trustee for WESTERN and to be paid over to WESTERN on account of the indebtedness of Borrowers to WESTERN but without reducing or affecting in any manner the liability of Guarantors under the provisions of the Guaranty. Any such notes now or hereafter evidencing such indebtedness of Borrowers to Guarantors shall be marked with a legend that the same are subject to this agreement and, if WESTERN so requests, shall be delivered to WESTERN....

IN WITNESS WHEREOF the undersigned Guarantors have executed this Guaranty this [respective date of guaranty].

Sam B. Riddick—President

/s/ _____

(*See* Exhibits A, B, C and D to plaintiff's brief).

The amounts of the guaranties were as follows:

| Guaranty Date | Amount |
|---|---|
| October 6, 1977 | $100,000.00 |
| March 20, 1978 | 200,000.00 |
| September 1, 1978 | 300,000.00 |
| September 8, 1979 | 500,000.00 |

(*Id.*)

Notwithstanding the "continuing" nature of the guaranties, Western Wheel refused to extend credit to Southeastern Wheels in excess of the face amount of the guaranty most recently executed prior to any request for credit. (Riddick affidavit; Rooker affidavit).

In 1981 Riddick sold his stock in Southeastern Wheels and resigned as its President. Thereafter, Western Wheel required the new President of Southeastern Wheels Albert Randolph Rooker, to execute a guaranty for the indebtedness of Southeastern Wheels to Western Wheel. (Rooker affidavit). Western Wheel continued to refuse to extend credit to Southeastern Wheels beyond the face amount of the most recently executed guaranty. (*Id.*).

Riddick has never given Western Wheel written notice of the revocation of any of the continuing guaranties.

On January 2, 1985, Riddick received a demand from Rockwell International under the continuing guaranties for the amount in which Southeastern Wheels was allegedly indebted to Western Wheel at that time. Riddick was also apprised that he had 10 days from the receipt of this notice to satisfy the demand to avoid the imposi-

tion of attorneys' fees as contemplated by Ga. Off'l Code Ann. § 13–1–11.

Rockwell International initiated this suit on February 8, 1985, for breach of the continuing guaranties because Riddick refused to pay it the money demanded.

DISCUSSION

Plaintiff moves for summary judgment on the ground there is no genuine dispute that defendant has breached his obligations under the continuing guaranties and is liable to plaintiff in the amount of $556,364.76 plus statutory attorneys' fees.[2]

Defendant opposes the motion on several grounds: (1) plaintiff has not proven that it is the entity entitled to sue on the guaranties; (2) plaintiff has not proven that there exists any indebtedness of Southeastern Wheels to which the guaranties apply; (3) there is a fact question as to whether defendant signed the guaranties in his representative, rather than individual, capacity; and (4) there is a fact question as to whether the four guaranties were revoked.

The court will address each of the issues raised by defendant's arguments seriatim.

A. *The real party in interest*

■ Defendant first argues that plaintiff has not proven and cannot prove that it is the real party in interest. According to defendant, Western Wheel, the successor-in-interest to Western U.S. Industries, is a separate corporation owned, not by plaintiff, but by a corporation known as Kelsey Hayes Corporation.

The court finds that plaintiff has produced sufficient uncontroverted evidence to establish that Western Wheel was a division of Rockwell International when defendant signed all of the guaranties except the one executed on October 6, 1977; that Rockwell International is the successor-in-interest to Western U.S. Industries, interest in the guaranties; that Rockwell International has not assigned its interest in the four

guaranties to Kelsey Hayes Corporation or any other entity; and thus that Rockwell International is the obligee, either directly or by way of assignment, under the four guaranties of Southeastern Wheels' indebtedness. (McKenney affidavits and Exhibits B and C filed January 22, 1986).

The assertions of Albert Randolph Rooker and defendant that "Western Wheel Company" is currently owned by Kelsey Hayes Corporation, not Rockwell International, is not probative evidence to the contrary. These assertions are not evidence of which entity is currently the obligee under the four guaranties.

Accordingly, the court rejects defendant's first argument in opposition to plaintiff's motion for summary judgment.

B. *Southeastern Wheels' indebtedness to Western Wheel*

■ Defendant's second argument—that plaintiff has failed to demonstrate that there is any indebtedness of Southeastern Wheels to which the guaranties apply—is well taken. Plaintiff has produced evidence to establish the amount of Southeastern Wheel's debt to Rockwell International (*see* Fabrizio affidavit) but has not produced evidence to show the *source* of this indebtedness. As the guaranties cover only the indebtedness of Southeastern Wheel to Western Wheel, and not the indebtedness of Southeastern Wheel to any of the other divisions of Rockwell International or to Rockwell International directly, the source of the claimed indebtedness is important. Without any evidence to prove that there exists some indebtedness of Southeastern Wheel to Western Wheel, the court must conclude that there remains a fact question as to whether there is any indebtedness of Southeastern Wheels to which the guaranties apply.

C. *Individual capacity*

■ Defendant's third argument presents the question of whether there is

2. Initially plaintiff claimed that defendant owed it $625,962.68 to cover Southeastern Wheel's indebtedness. (Complaint, ¶ 11 and WHEREFORE clause; plaintiff's August 22, 1985 brief,

p. 2). Following bankruptcy proceedings, Southeastern Wheel's indebtedness is currently $556,364.76, according to plaintiff. (McKenney affidavit filed January 22, 1986).

any genuine dispute that defendant signed the guaranties in his individual, rather than representative, capacity. Plaintiff submits that the guaranties clearly and unambiguously bound defendant personally. Defendant, on the other hand, contends that the guaranties are ambiguous as to whether he signed in a corporate or individual capacity and that parol evidence (namely, his own testimony and the testimony of his successor, Albert Rooker) creates a fact question as to the parties' intent regarding this matter.

While it appears that no Georgia court [3] has had the opportunity to address the specific situation now before this court, this court has no difficulty in concluding that a Georgia court would find that the subject guaranties were clearly and unambiguously signed by defendant in his individual capacity and that, consequently, the parol evidence rule precludes a consideration of any contrary extraneous evidence of the parties' intentions. *See, generally,* Annot., 70 A.L.R.3d 1276 (1976). Accordingly, the court finds that there is no genuine dispute that defendant is personally liable on the four continuing guaranties.

The form and content of the guaranties manifest a clear intent to bind defendant personally rather than the company of which defendant was president at the time, Southeastern Wheels. Of foremost importance is the fact that the indebtedness which was being guaranteed was that of Southeastern Wheels; this alone strongly suggests that defendant signed in his individual capacity since, as another court has observed, "[f]or a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless." [4] *Roy v. Davidson Equipment, Inc.,* 423 So.2d 496, 496–97 (Fla.Dist.Ct.App.1982). *See also Ricker v. B–W Acceptance Corp.,* 349 F.2d 892, 895 (10th Cir.1965) (applying

New Mexico law); *American Petrofina Co. v. Bryan,* 519 S.W.2d 484, 487 (Tex.Civ. App.1975).

The court does not rest on this one observation, however; there are other provisions of the guaranties which negate any suggestion that defendant signed in his representative capacity. Throughout, the guaranties differentiate the "guarantor" from Southeastern Wheels, the "borrower", and never refer to Southeastern Wheels as the guarantor. They provide that the obligations of the "guarantor" are independent of the obligations of Southeastern Wheels and that a separate action may be brought against the "guarantor" regardless of whether an action is brought against Southeastern Wheels. The guaranties also provide that the guarantor waives any right to require the obligee to proceed against Southeastern Wheels and waives any defense arising by reason of any disability or other defense of Southeastern Wheels. Additionally, the guaranties state that any indebtedness of Southeastern Wheels to the guarantor is subordinated to the indebtedness of Southeastern Wheels to the obligee under the guaranties.

It could not be clearer to this court that the subject guaranties evidence the intent to bind defendant as an individual guarantor. *Cf. Ricker v. B–W Acceptance Corp., supra; Roy v. Davidson Equipment, Inc., supra.*

■ In so holding, the court rejects the position that the word "president" after defendant's signature creates an ambiguity as to the capacity in which he signed. Since the language of the guaranties reveals a clear intent to bind defendant personally, the word "president" following his signature must be considered merely descriptive of him and not sufficient to render the guaranties ambiguous. *Accord Ricker v. B–W Acceptance Corp., supra,* 349 F.2d

---

3. The parties are in agreement that Georgia law controls this diversity action. (*See* plaintiff's brief filed January 6, 1986, and defendant's brief filed January 22, 1986).

4. It is well-established that "[a] contract must be given a reasonable construction which will uphold and enforce the instrument, if possible, rather than a construction which would render it meaningless and ineffective...." *Brown v. Chrysler Corp.,* 112 Ga.App. 22, 23, 143 S.E.2d 575 (1965).

at 895; *American Petrofina Co. v. Bryan, supra,* 519 S.W.2d at 487. *But see Puget Sound National Bank v. Selivanoff,* 9 Wash.App. 676, 514 P.2d 175, 177–78 (1973). This is consistent with Georgia's rule of *descriptio personae. See, e.g., Candler v. DeGive,* 133 Ga. 486, 487, 66 S.E. 244 (1909); *White v. Atlanta Parking Service Co.,* 139 Ga.App. 243, 245–46, 228 S.E.2d 156, 159 (1976); *Latham Plumbing & Heating Co. v. Ledbetter Trucks, Inc.,* 96 Ga.App. 219, 221, 99 S.E.2d 545 (1957).

Having concluded that the guaranties unambiguously bind defendant personally, the court does not consider defendant's parol evidence that the parties did not intend for him to be bound personally. To do so would violate the parol evidence rule. Ga. Off'l Code Ann. § 24–6–1 ("Parol contemporaneous evidence is generally inadmissible to contradict or vary the terms of a valid written instrument."); *Cooper v. Mercantile National Bank,* 137 Ga.App. 605, 609, 224 S.E.2d 442 (1976).

### D. *Revocation*

Defendant next argues that there is a fact question as to whether the subject guaranties were revoked. Specifically, he argues that there is a fact question as to whether the execution of each new guaranty constituted written notice of the revocation of the previous guaranty, or, alternatively, that there is a fact question as to whether the provision of the guaranties requiring revocation be in writing was waived and whether all but the most recently executed guaranty (by Albert Rooker) was revoked.

■ The court rejects defendant's argument that each guaranty can be deemed evidence of a written revocation of the previous guaranty. Each of the four guaranties stated that

[T]his Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties. The liability of any Guarantor to WESTERN shall at all times be deemed to be the aggregate liability of said Guarantor under the terms of this Guaranty, and of

any other Guaranties heretofore or hereafter given by said Guarantor to WESTERN and not expressly revoked, modified or invalidated....

Thus, by the express terms of the guaranties, the guaranties do not constitute evidence of the written revocation of previous guaranties.

■ Turning to defendant's waiver and nonwritten revocation argument, the court agrees that there exists a fact question as to whether the parties waived the requirement that revocation be in writing and as to whether the parties revoked the four guaranties signed by defendant. Giving defendant the benefit of all favorable inferences, the court finds that such a fact question is created by defendant's affidavit testimony, including his testimony that plaintiff did not treat the guaranties as cumulative. [Contrary to what plaintiff contends, consideration of this testimony is not in violation of the parol evidence rule as this testimony is evidence of what occurred *after* the execution of the written guaranties.]

### CONCLUSION

In sum, the court PARTIALLY GRANTS and PARTIALLY DENIES plaintiff's motion for summary judgment as follows:

(1) the court finds that there is no genuine dispute that plaintiff is the real party in interest and that defendant signed the subject guaranties in his individual capacity;

(2) the court finds that there is a genuine dispute as to whether there is any indebtedness of Southeastern Wheels to which the guaranties apply and as to whether the guaranties were revoked subsequent to their execution.