**ROCKWELL INTERNATIONAL CORP., Plaintiff,**

v.

**Sam B. RIDDICK, Defendant.**

**Civ. A. No. C85–1517.**

United States District Court, N.D. Georgia, Atlanta Division.

May 20, 1987.

---

W. Terence Walsh, Alston & Bird, Atlanta, Ga., for plaintiff.

J. Corbett Peek, Jr., Peek and Whaley, Atlanta, Ga., for defendant.

## ORDER

ROBERT H. HALL, District Judge.

This contracts case is currently before the court on plaintiff's motion for judgment notwithstanding the verdict, or in the alternative, for a new trial.

In its order of March 19, 1986, 633 F.Supp. 276, the court partially granted and partially denied summary judgment on plaintiff Rockwell's motion. The court denied Rockwell International summary judgment on defendant Riddick's affirmative defense of waiver.

On December 10 and 11, 1986, trial was held before a jury. At the conclusion of all the evidence, Rockwell International moved for directed verdict. The court denied plaintiff's motion. The jury found for defendant in all respects. Plaintiffs is now back before the court asking that this court overturn the jury verdict or order a new trial.

## FACTS

This case involves an action by plaintiff Rockwell on the debt of Southeastern Wheels, Inc. to Western Wheel Division of Rockwell International. Defendant Riddick was President and two-thirds shareholder of Southeastern Wheels from its formation in 1976 until he sold his interest to his business associate Albert R. Rooker in 1981. Rooker had actually run the day to day operations of the business since its inception.

To finance its dealings with its trade creditor Rockwell, Southeastern Wheels entered into a revolving credit arrangement by which Rockwell extended Southeastern a thirty day line of credit. As security for the debt, Rockwell and defendant Riddick entered into a guaranty arrangement in which Riddick signed a series of personal guaranties to secure the debt of his business.

At the center of this dispute are these four allegedly "continuing" guaranties signed by defendant Riddick as guarantor of certain indebtedness of Southeastern Wheels. Riddick was president of Southeastern at the time he signed the guaranties and all four of the guaranties identified him as such following his signature.

Three of the guaranties guaranteed the indebtedness of Southeastern Wheels to a corporation identified as "Western U.S. Industries" and one guaranteed the indebtedness of Southeastern Wheels to a corporation identified as "Western Wheel, a division of Rockwell International, Inc." Western Wheel became the successor-in-interest of Western U.S. Industries when plaintiff Rockwell International purchased Western U.S. Industries and made it a division of Rockwell International called Western Wheel.[1]

Each guaranty was substantively identical, stating in pertinent part:

(1) For valuable consideration, the undersigned (hereinafter called Guarantors) jointly and severally unconditionally guarantee and promise to pay to [WESTERN], or order, on demand in lawful money of the United States, any and all indebtedness of Southeastern Wheels, Inc. (hereinafter called Borrowers) to WESTERN....

(2) The liability of Guarantors shall not exceed at any one time the [respective amount of the guaranty] for principal, together with all interest on such part of the indebtedness as does not exceed aforesaid principal. Notwithstanding the foregoing, WESTERN may permit the indebtedness of Borrowers to exceed Guarantors liability. This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This Guaranty shall not apply to any indebtedness created after actual receipt by WESTERN of written notice of

its revocation as to future transactions.... The obligations of Guarantors hereunder shall be in addition to any obligations of Guarantors, or either of them, under any other guaranties of the indebtedness of Borrowers or any other persons heretofore given or hereafter to be given to WESTERN unless said other guaranties are expressly modified or revoked in writing; and this Guaranty shall not, unless expressly herein provided, affect or invalidate any such other guaranties. The liability of any Guarantor to WESTERN shall at all times be deemed to be the aggregate liability of said Guarantor under the terms of this Guaranty, and of any other guaranties heretofore or hereafter given by said Guarantor to WESTERN and not expressly revoked, modified or invalidated.

(3) The obligations hereunder are ... independent of the obligations of Borrowers, and a separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Borrowers or whether Borrowers be joined in any such action or actions; ....

(4) .... WESTERN may without notice assign this Guaranty in whole or in part.

(5) Guarantors waive any right to require WESTERN to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; .... Guarantors waive any defense arising by reason of any disability or other defense of Borrowers or by reason of the cessation from any cause whatsoever of the liability of Borrowers. Until all indebtedness of Borrowers ... shall have been paid in full, even though such indebtedness is in excess of Guarantors' liability hereinunder, Guarantors shall have no right of subrogation, and waive any right to enforce any remedy which WESTERN now has or may hereafter have against Borrowers, and waive any benefit of, and any right to participate in

---

1. In the interest of simplicity, the court will designate Western U.S. Industries, Western Wheel, Division of Rockwell International and Rockwell International collectively as "Rockwell".

any security now or hereafter held by WESTERN....

(7) Any indebtedness of Borrowers now or hereafter held by Guarantors is hereby subordinated to the indebtedness of Borrowers to WESTERN; and such indebtedness of Borrowers to Guarantors is assigned to WESTERN as security for this guarantee and the indebtedness and if WESTERN so requests shall be collected, enforced and received by Guarantors as trustee for WESTERN and to be paid over to WESTERN on account of the indebtedness of Borrowers to WESTERN but without reducing or affecting in any manner the liability of Guarantors under the provisions of the Guaranty. Any such notes now or hereafter evidencing such indebtedness of Borrowers to Guarantors shall be marked with a legend that the same are subject to this agreement and, if WESTERN so requests, shall be delivered to WESTERN....

IN WITNESS WHEREOF the undersigned Guarantors have executed this Guaranty this [respective date of guaranty].

Sam B. Riddick—President

/s/_____

Notwithstanding the "continuing" nature of the guaranties, Rockwell generally refused to extend credit to Southeastern Wheels in excess of the face amount of the guaranty most recently executed prior to any request for credit.

In October 1977, Southeastern obtained a credit line of $100,000.00 from Rockwell conditioned upon the execution by defendant of a guaranty in the face amount of $100,000.00 (Tr. 21–22, 50, 109–110, Plaintiff's Exhibit 11). Riddick signed this guaranty on October 6, 1977, *Id.* As Southeastern's business was expanding, in March 1978, the credit line was increased to $200,000.00 and Riddick signed a guaranty in that amount on March 20, 1978. (Tr. 51–52, 110–111, 118 Plaintiff's Exhibit 11).

Southeastern's credit needs continued to grow and in September 1978 plaintiff increased the credit limit to $300,000.00 and required Riddick to execute a new guaranty in the face amount of $300,000.00 which Riddick signed September 1, 1978. (Tr. 52–53, 118, Plaintiff's Exhibit 11).

The business continued to expand and when the $300,000.00 credit limit began to be exceeded, defendant extended Southeastern's credit limit to $500,000.00 and sought in August 1979 to obtain a new $500,000.00 guaranty from Riddick. *Id.* Apparently, Rockwell, through its representative Thomas Zastera, had informed Mr. Rooker of its desire, but Rooker had some difficulty getting in touch with Mr. Riddick to have the guaranty signed. (Tr. 54). Thus, a time lag of several weeks ensued before Riddick signed the $500,000.00 guaranty during which Southeastern exceeded its $300,000.00 credit line. *Id.* Riddick signed this last guaranty on September 8, 1979.

In 1981, Riddick sold his stock in Southeastern Wheels to Mr. Rooker and resigned as President. Thereafter, Western Wheel required the new President of Southeastern Wheels Mr. Rooker, to execute a guaranty for the indebtedness of Southeastern Wheels to Western Wheel. (Tr. 108–118). Western Wheel generally continued to refuse to extend credit to Southeastern Wheels beyond the face amount of the most recently executed guaranty.[2]

Defendant Riddick never gave Western Wheel written notice of the revocation of any of the guaranties.

On January 2, 1985, Riddick received a demand from Rockwell International under the guaranties for the amount in which Southeastern Wheels was allegedly indebted to Western Wheel at that time. Riddick was also apprised that he had 10 days from the receipt of this notice to satisfy the demand to avoid the imposition of attorneys' fees as contemplated by Ga. Off'l Code Ann. § 13–1–11.

**2.** Plaintiff contends that on October 12, 1982, when Rooker signed a $500,000 guaranty, Southeastern's debt to Rockwell was in excess of $500,000.00. According to plaintiff's Exhibit

11, Southeastern's debt was $633,476.38 on October 1, 1982 and $621,267.72 on November 30, 1982 (Tr. at 37).

Rockwell International initiated this suit on February 8, 1985, for breach of the guaranties because Riddick refused to pay it the money demanded.

Further facts will be disclosed as necessary to the disposition of this motion.

## DISCUSSION

### I. Motion for Judgment Notwithstanding the Verdict

Plaintiff argues that the guaranties executed by Riddick are by their terms cumulative and continuing, and that absent an effective affirmative defense by Riddick, they should be given full effect towards the debt of Southeastern. Moreover, plaintiff argues that the evidence at trial was insufficient to support a jury finding that the parties by their conduct waived the contractual provision that any revocation of the guaranties be in writing. Plaintiff further argues that the parties treated each successive guaranty as cumulative, not as superceding the prior guaranty. Plaintiff also contends that there was insufficient evidence produced at trial to support the jury's finding that Mr. Rooker's subsequent execution of a $500,000.00 guaranty effected a novation of Mr. Riddick's previous obligations.

Defendant contends that the conduct of the parties in consistently raising Southeastern's credit limit commensurate with the amount of the most recently executed guaranty signed by Riddick, as demonstrated in plaintiff's Exhibit 11, is substantial evidence that the parties waived the revocation-by-writing requirement of the guaranties *and* is substantial evidence that the parties treated each consecutive guaranty by Riddick as superceding the previous one. Further, defendant argues that by Rockwell's conduct of (1) "zeroing out" the indebtedness of Southeastern Wheels' account (See Plaintiff's Exhibit 11) as of March 31, 1981, the time Riddick sold his interest in the business, (2) creating an entirely new business arrangement with Mr. Rooker, who thereafter signed a new guaranty for $500,000.00, and (3) continuing after Mr. Rooker took over the business to extend credit only up to the face amount of the most recently executed

guaranty, Rockwell indicated that it considered Rooker's guaranty to supercede and extinguish Riddick's indebtedness.

The Eleventh Circuit has held that the standards regarding judgment notwithstanding the verdict and entry of directed verdict are identical. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250 (5th Cir.1980) The Eleventh Circuit recently restated the familiar standard of review:

> On motions ... for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the nonmover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict, granting of the motion is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men might reach different conclusions, the motions should be denied.

*Keiser v. Coliseum Properties, Inc.*, 764 F.2d 783 (11th Cir.1985); *citing Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053 (11th Cir.1982) (citing *Boeing v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969).

### A. *Waiver and Revocation of Mr. Riddick's Guaranties.*

 Absent an effective affirmative defense to the clear terms of the guaranties, plaintiff may collect on defendant Riddick's indebtedness. It is undisputed that the language of the guaranties provides that revocation of the obligation be in writing only. Defendant contends, however, that the parties evidenced their intention to waive this requirement by conduct. Further, defendant shows that by treating each successive guaranty as superceding the previous one rather than as cumulative, the parties indicated their intention to revoke defendant Riddick's previous indebtedness with each new guaranty.

The law of waiver in Georgia provides that for there to be a waiver, there must be a showing of mutual intention to vary the contract. The fact that one party intended to treat a contractual provision as no longer binding is insufficient to demonstrate waiver. *Prudential Ins. Co. v. Nessmith*, 174 Ga.App. 39, 329 S.E.2d 249 (1985). Where the only evidence of an intention to waive is what a party does or forebears to do, the actions, or omissions to act relied on must be so manifestly consistent with a waiver of a right that no other reasonable explanation of this conduct is possible. *Jones v. Roberts Marble Co.*, 90 Ga.App. 830, 832, 84 S.E.2d 469 (1954); *D.I. Corbett Elec., Inc. v. Venture Constr. Co.*, 140 Ga.App. 586, 588, 231 S.E.2d 536 (1976). Plaintiff has cited the court no case, however, to indicate as plaintiff argues that such a situation requires a "clear and convincing" standard be applied by the court to this question in its charge to the jury or at this stage in the proceedings.

Defendant at trial produced evidence of a pattern of conduct that both parties acted in such a way as to waive the "revocation-by-writing" provision of the guaranty *and* that both parties treated each successive guaranty signed by Riddick as superceding, and thereby revoking the previous ones. *See* discussion *supra* at 678–679.

The key piece of evidence produced by defendant to support the affirmative defense of waiver and revocation by conduct was defendant's Exhibit 1, also plaintiff's Exhibit 11, entitled "Southeastern Wheels, Inc.—Status of Accounts Receivable by Month." This breakdown of accounts receivable by month clearly indicates that Western Wheel habitually refused to extend credit to Southeastern Wheels in excess of the face amount of the guaranty most recently executed by Riddick. There were one or two months out of five years of dealings during which Southeastern's monthly balance did exceed the face amount of the last guaranty signed. However, defendant introduced evidence that during these periods, especially during the time Rockwell had requested the $500,-000.00 guaranty in the late summer of 1979, that the parties were in agreement over the necessity of the guaranties and merely had trouble locating Mr. Riddick to obtain his signature. The balance sheet of accounts receivable and the testimony of Messrs. Zastera, Riddick and Rooker are substantial evidence probative of defendant's position that both parties, by their conduct, (1) waived the requirement that revocation be in writing and (2) revoked each previous guaranty with Riddick's signature of a new one.[3] Certainly the evidence produced is probative of such a pattern of conduct by both parties and this pattern of conduct is consistent with an intention by the parties of waiver and revocation.[4] A reasonable jury could so find.

## B. *Novation*

Plaintiff argues that even if each of Riddick's successive guaranties superceded the previous ones, Riddick is still indebted

---

**3.** Plaintiff makes much of the argument that the inferences from the above-cited evidence "violate the parole (sic) evidence rule." See Plaintiff's Motion at 7–9, Plaintiff's Reply Brief at 4–6 and Plaintiff's Supplemental Brief at 2–4. Evidently, plaintiff argues that because this court's March 19, 1986, order held that waiver and revocation could only be proved by facts other than the fact of the execution by Mr. Riddick of each of the guaranties, that any evidence of circumstances surrounding the pattern of extension of credit by Rockwell and the signing of commersurate guaranties by Riddick is inadmissible. The court there said:

> The court rejects defendant's argument that each guaranty can be deemed evidence of a written revocation of the previous guaranty ... Thus, by the express terms of the guaranties, the guaranties did not constitute evidence of the written revocation of previous guaranties.

This is a non-argument. The jury was not permitted to draw this conclusion as the issue of written revocation was not before the jury. The issue then as now was whether there was waiver or revocation by conduct. As noted above, defendant produced substantial evidence that there was.

**4.** Moreover, under the language of *Jones v. Roberts Marble C..* and *D.I. Corbett Elec., Inc. v. Venture Contr. Co.*, *supra* the jury was permitted to find that the evidence of the parties' conduct was so manifestly consistent with a waiver of the "revocation-by-writing" provision of the guaranty that no other reasonable explanation of this conduct is possible.

to Rockwell for the last $500,000.00 guaranty he signed. Defendant Riddick contends that the $500,000.00 guaranty signed by Mr. Rooker effected a novation of Riddick's obligation under the last guaranty.

In Georgia, the party with the burden of proof on the defense of novation must prove four elements: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, and (4) the validity of the new contract. *Scarboro v. Universal C.I.T. Credit Corp.*, 364 F.2d 10 (5th Cir.1966); *Miller-Terrell, Inc. v. Strother*, 85 Ga.App. 763, 765, 70 S.E.2d 160 (1952). The mere assumption of a debt by a third party is not sufficient to establish novation of the original contract unless there is shown an intention to release the first obligor and to extinguish his liability; otherwise, the assumption of the debt by the third party will be presumed to be merely additional security. *Intern. Harvester Credit Corp. Clenny*, 505 F.Supp. 983 (M.D.Ga.1981); *Sportsman Camping Center of American, Inc. v. Bagwell*, 140 Ga. App. 312, 231 S.E.2d 118 (1976). Release of the original debtor and substitution of a new debtor may be by express terms or may be inferred from the facts and circumstances attending the transaction and the acts of the parties. *Intern. Harvester* at 986; *Yancey Brothers Co. v. Bowling*, 92 Ga.App. 291, 293, 88 S.E.2d 566 (1955).

The key question here is whether there was substantial probative evidence produced at trial of the conduct of the parties that would evidence an agreement by the parties that Rooker's guaranty acted to release Riddick of the obligation on his own guaranty.[5] The parties and their witnesses hotly dispute whether such an agreement existed. Rooker and Riddick take the position that they understood Rooker's guaranty to release Riddick. Zastera contended that he, on behalf of Western Wheel (Rockwell), never had any discussions with Mr. Rooker concerning the effect, if any, Mr. Rooker's guaranties had on Mr. Riddick's guarantees. *See* testimony of Rooker Tr. at 119–120, testimony of Zastera Tr. at 38–40, testimony of Riddick Tr. at 92–93, 94, 100, 105–107.

Undoubtedly there is insufficient evidence of an *express* agreement; the question is whether defendant produced sufficient evidence that a novation and release may be inferred from the facts and circumstances attending the transaction and "the acts of the parties." *Yancey Brothers supra.* Defendant contends that he introduced evidence showing that plaintiff "zeroed out" the account of Southeastern Wheels at the time defendant sold his business and divorced himself from further contact with it. At that time, defendant contends, plaintiff entered into an entirely new and different business arrangement with Mr. Rooker, the new sole proprietor of the business, requiring guaranties and promissory notes from Rooker. Further, defendant contends that credit limits under this new arrangement were set by plaintiff without consideration by plaintiff of any guaranties signed by defendant.

In support, defendant shows the court plaintiff's Exhibit 11, "Southeastern Wheels, Inc.—Status of Accounts Receivable by Month" which indicates that account 80–5325, that of Southeastern Wheels when owned by defendant, was closed and a zero balance entered by March 31, 1981. Plaintiff's Exhibit 11, Defendan's Exhibit 1. Mr. Riddick sold out his interest in the business in February 1981. Tr. at 55. At that time, a new account was begun for Southeastern Wheels under its new ownership. *Id.* Defendant shows that after Mr. Riddick had sold his interest in the business to Mr. Rooker, Rockwell's representatives called on Rooker to sign a $500,000.00 guaranty of his own. Tr. at 55–56. Mr. Rooker signed this guaranty October 12, 1982.[6] Defendant produced evidence in the

5. It is undisputed that if sufficient evidence of such agreement was produced that elements (1), (3) and (4) of novation, *see* discussion *supra*, are met. (1) The previous obligation was valid. (3) If the parties agreed to release Riddick, then the scope of the Rooker guaranty acted to extinguish Riddick's guaranty. (4) the Rooker guaranty was valid.

6. There seems to be some confusion in the record over whether Rooker had previously signed a $500,000.00 guaranty securing indebt-

form of testimony by Mr. Rooker and the "Accounts Receivable" chart that Rockwell International set credit limits under the new arrangement with Rooker without regard to defendant Riddick's guaranties.[7] Tr. at 124–125; Plaintiff's Exhibit 11.

Thus, defendant argues that he produced evidence at trial sufficient that a reasonable jury could conclude that the parties, by their conduct, treated Mr. Riddick as released from all obligations on his September 8, 1978 guaranty. Certainly the conduct of the parties is consistent with such an agreement. The court finds the evidence produced by defendant probative of this contention in that it indicates a pattern of dealings between the parties based on the business assumption that Mr. Riddick's guaranties were no longer effective.[8] A reasonable jury could so find.

Accordingly, the court finding substantial evidence to support the verdict of the jury, DENIES plaintiff's motion for judgment notwithstanding the verdict.

## II. Motion for New Trial

 In the alternative, plaintiff Rockwell moves for a new trial. A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence. *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982). In comparison to the "substantial evidence" standard for judgment n.o.v., the standard for judging a motion for a new trial is more stringent. Additionally, in certain situations a trial court should grant greater deference to a jury verdict:

> Thus, when the trial involves simple issues, highly disputed facts, and there is an absence of "pernicious occurrences," trial courts should be considerably less inclined to disturb a jury verdict.

*Id.* at 974. After careful consideration, the court does not find that the verdict in this case is contrary to the great weight of the evidence. The court relies on the entire record and does not feel it necessary to resummarize the evidence favoring the jury verdict.

Additionally, the court finds no merit to plaintiff's argument that questions posed by the jury to the court during its deliberations indicate confusion on the part of the jury or indicate that the jury failed to follow the court's instructions. *See Smallwood v. Pearl Brewing Co.,* 489 F.2d 579, *cert. denied* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974) (whether or not jury misunderstood the charge of the court is not a question to be reexamined after the verdict has been rendered). The court, accordingly, DENIES plaintiff's motion for a new trial.

---

edness of Southeastern Wheels to Rockwell and whether such guaranty was misplaced. Zastera testimony Tr. at 56 and 71–72. Although the court need not reach this question, a reasonable jury could infer from this testimony that a guaranty signed by Rooker prior to October 12, 1982 existed and was misplaced.

**7.** As the court noted at note 2 *supra,* plaintiff contests this assertion by pointing out that Southeastern's debt at the time Rooker signed the $500,000.00 guaranty on October 12, 1982 exceeded the $500,000.00 amount—$633,476.38 on October 1, 1982 and $621,267.72 on November 30, 1982. Tr. at 37, Plaintiff's Exhibit 11.

**8.** Plaintiff relies heavily on the facts of *Scarboro v. Universal C.I.T. Credit Corp., supra* for the proposition that defendant presented insufficient evidence to establish his affirmative defense of novation. However, in that case which was before the court on summary judgment, the court found only that defendants there had produced "insufficient evidence of an *express* agreement of release by the new guarantors." *Id.* at 15. The issue of release based on inferences from "the facts and circumstances attending the transaction and the parties' subsequent conduct", *see Intern. Harvester* at 986 *supra,* was not before the court.